543 F.Supp. 1 (1981)
ST. LOUIS THEATRICAL COMPANY, Plaintiff,
v.
ST. LOUIS THEATRICAL BROTHERHOOD LOCAL 6 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE OPERATORS OF the UNITED STATES AND CANADA, Defendant.
No. 82-5C(B).
United States District Court, E. D. Missouri, E. D.
June 25, 1981.
John Gazzoli, St. Louis, Mo., for plaintiff.
Bruce Feldacker, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, District Judge.
Before us are cross-motions for summary judgment. Plaintiff seeks to vacate an arbitrator's award in part and defendant seeks to enforce it. Both parties are in agreement that there are no genuine issues of material fact and that the sole issue is one of law.
Plaintiff operates a theatre in St. Louis. Defendant union represents the stagehands employed by plaintiff. The parties entered into a collective bargaining agreement which contains, inter alia, grievance resolution and arbitration provisions. While the agreement was in effect, one of the employees represented by the union, Richard McCarthy, was terminated by plaintiff on the stated ground that he had participated in a work stoppage in violation of Article 31 of the collective bargaining agreement. A grievance on McCarthy's behalf was submitted to arbitration.
The arbitrator expressly found that McCarthy had participated in the work stoppage "and must, therefore, be subject to discipline." However, based on his finding that plaintiff was "also at fault in some respects in connection with the employee's *2 conduct", and in light of the employer's testimony that the decision to terminate McCarthy was "also" based upon a previous offense of which he was guilty, the arbitrator concluded that the discipline should be reduced from discharge to a thirty day suspension without pay and ordered McCarthy reinstated and made whole as to wage losses. The sole issue is whether the arbitrator exceeded his authority under the collective bargaining agreement in awarding reinstatement and backpay.
There is no dispute between the parties concerning the standards for reviewing the decision of an arbitrator. Courts have no authority to review the merits of the underlying controversy. "If we find that the arbitrator's award drew its essence from the collective bargaining agreement, then it must be enforced." Vulcan-Hart Corporation v. Stove, Furnace & Allied Appliance Workers, 671 F.2d 1182, 1184 (8th Cir. 1982), citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 which further held:
"(A)n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."
The pertinent provisions of the collective bargaining agreement are found in Articles 28, 30 and 31. Article 28 prescribes a grievance procedure culminating in arbitration. Article 30(c) sets forth the jurisdiction of the arbitrator as follows:
"(c) The Arbitrator may consider and decide only the particular issue or issues presented by the grievance or by the parties submitted to him in writing and only issues relating to the interpretation and/or application of the Agreement. The Arbitrator shall not have jurisdiction over the rights of management not expressly and specifically restricted by this Agreement and shall have no right to alter, amend, modify or change the terms or provisions of this Agreement. The decision of the Arbitrator shall be final and binding."
Article 31, which the arbitrator found had been violated by McCarthy, prohibits slowdowns, cessation of work, strikes, interference with the business of the Company or other disruptive activities. It further provides:
"Any employee violating the provision may be disciplined or discharged and shall have no recourse to any other provision of this Agreement except as to the fact of participation."
In our consideration of the validity of the arbitrator's award voiding the discharge and substituting milder discipline we start with the premise that "the question of interpretation of the collective bargaining agreement is a question for the arbitrator", so that if the agreement is ambiguous and susceptible of more than one interpretation, the arbitrator's construction, even if not explicitly set forth, is binding on the parties and the courts. Nevertheless, "if it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation", it follows that the award did not draw its essence from the collective bargaining agreement. Such, we believe, is the situation in this case.
As appears supra, the collective bargaining agreement in terms provides that "(t)he arbitrator shall not have jurisdiction over the rights of management not expressly and specifically restricted by this Agreement and shall have no right to alter, amend, modify or change the terms or provisions of this Agreement." And of decisive importance is the provision that any employee violating the no work stoppage article "(m)ay be disciplined or discharged and shall have no recourse to any other provision of this Agreement except as to the fact of participation." There is no restriction upon the right of management to decide what punishment is appropriate.
*3 This case is wholly unlike Vulcan-Hart, supra, and Kewanee Machinery Division, Chromalloy American Corp. v. Teamsters Local No. 21, 593 F.2d 314 (8th Cir. 1974). In Vulcan-Hart, the agreement contained conflicting clauses, one providing that the employer had the right to lay off or discharge an employee for "sufficient cause including insubordination" and the other calling for immediate discharge for insubordination. The employer's determinations were made subject to review "to the extent that they are arbitrary, discriminatory, or capricious." Hence, even though the employee was guilty of insubordination, the arbitrator could interpret the agreement as meaning that if the employer's decision to discharge the employee was arbitrary, capricious and discriminatory, his offense was not sufficient cause for discharge. Under these facts, the arbitrator's award drew its essence from the collective bargaining and plant rule agreements.
Similarly, in Kewanee Machinery, the collective bargaining contained in addition to a broad management rights clause giving management the sole right to discharge employees, a further provision that employment relations would be broken when an employee is discharged for "proper cause." The Court held that the arbitrator could resolve the "tension" between the two clauses by determining that the employer did not retain complete control over discharges and that under the circumstances he found, the conduct in question was not a "proper cause" for discharge. There, too, the award drew its essence from the collective bargaining agreement.
The present case is comparable to Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (8th Cir. 1964). The contract there involved provided that employees may be discharged for proper cause, of which dishonesty was one. It further provided that although the arbitration board had no power or authority to add to, subtract from or in any way modify the terms thereof or to substitute its judgment for that of the management it could reverse management's actions or decision upon a finding that the employer's complaint against employee was not supported by the facts or that management had acted arbitrarily and in bad faith or in violation of the express terms of the agreement. The arbitrator found that the employee was guilty of dishonesty, the offense for which he was discharged. However, although he further found, in effect, that management had not acted arbitrarily and in bad faith nor in violation of the terms of the agreement, he nevertheless determined that the penalty of discharge was excessive, thereby substituting his own judgment for that of management.
The instant collective bargaining agreement does not limit the employer's right to discharge a guilty employee by the use of terms such as "proper cause" or "sufficient cause", as in Kewanee Machinery, supra, and in Chauffeurs Teamsters & Helpers Local Union v. Coca-Cola Bottling Company, 613 F.2d 716, (8th Cir. 1980), or by an "arbitrary, discriminatory or capricious" standard as in Vulcan-Hart. Moreover, the arbitrator expressly found that the discipline meted out to McCarthy was not arbitrary and discriminatory, and he rejected the union's contention that McCarthy had been singled out for discipline because of his union activities.
In Vulcan-Hart, the Court expressly held (671 F.2d at 1185), citing Ulry-Talbert, that absent a finding that the employer was arbitrary, capricious or discriminatory, a finding which the arbitrator in that case was authorized to make, the arbitrator would have exceeded his authority and acted "outside the essence of the agreement" by substituting suspension for discharge, thereby dispensing his own brand of industrial justice. That, in our judgment, is precisely what was done in this case.
Under the express, unambiguous, language of the collective bargaining agreement, namely, that the employee "shall have no recourse to any other provision of this Agreement except as to the fact of participation", an employee who wishes to contest his discharge based upon his alleged participation in a work stoppage may not *4 resort to the grievance procedure, including arbitration, except only as to the fact, vel non, of his participation in the work stoppage. Only the fact of participation is arbitrable, if this language is to have any meaning or purpose whatever. One of the rights of management is to determine the nature and extent of the punishment imposed upon an employee who violates the provision prohibiting work stoppages.
And, as noted supra, by the terms of the agreement, "(t)he Arbitrator shall have no jurisdiction over the rights of management not expressly and specifically restricted by this Agreement and shall have no right to alter, amend, or modify or change the terms or provisions of this Agreement." His function is to interpret ambiguous language in the collective bargaining agreement and to harmonize conflicting provisions thereof, but he is without authority to disregard or modify plain and unambiguous provisions.
The arbitrator did not discuss and apparently overlooked the provision of the agreement which limited his authority to decide the single issue of whether the employee had participated in a work stoppage. Having found against the employee on that issue, he was empowered only to deny the grievance. Whether or not extenuating circumstances existed which in the opinion of the arbitrator may have rendered the punishment excessive is legally irrelevant. Nothing in the agreement, expressly or impliedly, gave the arbitrator any authority to substitute his judgment for that of management in assessing the punishment. He "does not sit to dispense his own brand of industrial justice." In doing so in this case the arbitrator acted without jurisdiction and in excess of his authority.
Accordingly, plaintiff's motion for summary judgment should be and it is hereby sustained, and defendant's cross-motion for summary judgment should be and it is hereby denied. Judgment will be entered in accordance herewith.